## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RENEE SCHAUB )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>ALLSUP, )<br> )<br>    Defendant. )<br> )<br>Serve Registered Agent: )<br>P.K. Johnson IV )<br>11 S. High St. )<br>Belleville, IL  62220 ) | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Renee Schaub who suffers from severe asthma brings this cause of action for disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* as amended ("ADAA"). She states the following in support thereof:

### Parties

1. Plaintiff resides in Belleville, Illinois and is a resident in Illinois.

2. Defendant Allsup is a corporation doing business in the State of Illinois and employed more than 15 employees for at least 20 work weeks at the facility at which Plaintiff worked.

3. At all relevant times, Allsup employed Plaintiff as a Claims Specialist in Belleville, Illinois.

1

4. At all relevant times, Allsup has continuously been an employer engaged in an industry affecting commerce under 42 U.S.C. §12111(5) and 42 U.S.C. §12111(7), which incorporates 42 U.S.C. §§2000e(g) and (h).

5. At all relevant times, Allsup has been a covered entity under 42 U.S.C. §12111(2).

## Jurisdiction and Venue

6. Jurisdiction of this Court is founded upon 28 U.S.C. §1331 and 42 U.S.C. §12117(a), which incorporates by reference 42 U.S.C. §2000e-5(f)(3).

7. Venue is proper under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3) because the events giving rise to the claims occurred in this jurisdiction.

8. Plaintiff has satisfied the administrative prerequisites to suit under the ADAA. On or about May 7, 2018, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On May 29, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue, and this lawsuit is filed within ninety days of its issuance.

## Statement of Claims

9. Allsup employed Plaintiff as a Claims Specialist from December 18, 2017 to January 5, 2018.

10. At all relevant times, Plaintiff met Allsup's legitimate performance expectations.

11. Plaintiff suffers from asthma, which impairs her respiratory system and substantially limits, among other things, her ability to breathe.

12. Plaintiff's asthma is exacerbated by fumes, strong odors, and other airborne irritants. She managed her disease by limiting her exposure to irritants.

13. Starting on December 19, 2017, Defendant assigned Plaintiff to work in the Belleville Services Building.

14. The Belleville Services Building was being remodel, which including painting and installing new carpets.

15. Plaintiff did not know that the Belleville Services Building was being remodeled until after she was assigned to work in the building.

16. On Friday, December 22, 2017, Plaintiff inhaled the paint fumes in the Belleville Services Building on the way to her work station. Almost immediately, she experienced a searing pain in her chest and felt it tighten.

17. Plaintiff tried to work the rest of her shift on December 22, 2017. But, her rescue inhaler could not control her asthma. She began to shake, felt her face flush, and her heart beat much faster than normal. Plaintiff told her superior: "I have to leave. I need to go to the ER."

18. Plaintiff left work and immediately went to Memorial Hospital East's Emergency Room, where she received treatment for her asthma. She continued to struggle breathing. The emergency room doctor ordered Plaintiff to avoid "paint fumes or other triggering asthma factors."

19. On December 26, 2017, her first day back to work after ER visit, Plaintiff told her supervisor Amanda that she couldn't be exposed to paint fumes, thereby requesting a reasonable accommodation.

20. On December 28, 2017, Allsup allowed workers to paint and do remodeling work outside of Plaintiff's work space. Again, Plaintiff struggled to breathe. Again, her face, flushed. Again, her heart beat much faster than normal. By early morning, Plaintiff told Amanda that she needed medical attention. Plaintiff then returned to Memorial Hospital East's emergency room.

21. Plaintiff's doctor again ordered her to avoid the paint fumes and to take the rest of the day and the next day (Friday, December 29, 2017) off.

22. That day Plaintiff gave Amanda her new doctor's note. Amanda told Plaintiff to not return to work until she saw her primary care physician.

23. On January 2, 2018, Plaintiff saw her doctor, Dr. Muhiyuddin Khalid. Dr. Khalid ordered Plaintiff to not return to the Belleville Services Building during the remodeling. Plaintiff faxed the note from Dr. Khalid to Amanda.

24. Later on January 2, 2018, Allsup's Human Resource Generalist Tina LNU called Plaintiff. Tina expressed concern for Plaintiff's health, telling her that Allsup could accommodate Plaintiff by having her work in the "other location until the painting is complete. But, at the very least, Allsup could keep her job open." Plaintiff told Tina that she wanted to continue working at the other location. Tina concluded by saying, "I will check this out with the other people and see what the options are."

25. On January 4, 2018, Tina sternly told Plaintiff that if she wanted to keep her job, she needed to work in the Belleville Services Building. Plaintiff asked Tina if she could work in the other building as they had discussed before. "No," Tina said in a raised voice, "you need to get your doctor to release you or quit. Or we will fire you." After giving Plaintiff's this ultimatum, Tina instructed Plaintiff to let her know if her doctor would release her no later than January 5, 2018.

26. As instructed, Plaintiff called Tina on January 5, 2018. When Plaintiff told Tina that her doctor wouldn't release her, Tina said, "There is only one option. If you're not released then, you can pick up your things."

27. On January 5, 2018, Allsup fired Plaintiff.

28. Allsup, by its actions and failure to act, including but not limited to those described above, have discriminated against Plaintiff because of her disability, refused to provide reasonable

accommodation for her disability, and retaliated against her in violation of ADAA, 42 U.S.C. §§12112(b)(1), 12112(b)(5)(A) and 12203(a).

29. As a result of Allsup's actions and failures to act, Plaintiff has lost and continues to lose wages and other financial incidents and benefits of employment, has experienced emotional pain, suffering, humiliation, embarrassment, mental anguish, inconvenience and loss of enjoyment of life, and has incurred and will continue to incur attorneys' fees and costs in connection with this matter.

30. The conduct of Allsup as described herein was willful, wanton, malicious and undertaken with evil motive or reckless disregard for Plaintiff's federally-protected rights. Consequently, Allsup's conduct warrants the imposition of punitive damages.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendant Allsup for lost wages and benefits, compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

### Jury Trial Demand

Plaintiff requests a jury trial as to all claims.

>
> SEDEY HARPER WESTHOFF, P.C.
> Attorneys for Plaintiff
>
> */s/ Jessica M. Scales*
> Jessica M. Scales, #64136MO
> 2711 Clifton Ave.
> St. Louis, MO 63139
> 314/773-3566
> 314/773-3615 (fax)
> jscales@sedeyharper.com